UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
JUL 2 9 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA and THE STATE OF
NEW YORK, ex rel., JEAN NOLAN

                Plaintiff,

    v.

ELDERWOOD HEALTH CARE AT LINWOOD,
ELDERWOOD SENIOR CARE, INC., POST ACUTE
PARTNERS, AND DOES 1-100,

                Defendants.

15-CV-0099(S)

---

### UNITED STATES' AND STATE OF NEW YORK'S NOTICE OF INTERVENTION IN PART FOR PURPOSES OF SETTLEMENT AND DECLINATION IN PART

Plaintiffs the United States of America and the State of New York, Relator Jean Nolan, and the Defendants 4459 Bailey Avenue Operating Co., LLC, 225 Bennett Road Operating Co., LLC, 2850 Grand Island Boulevard Operating Co., LLC, 5775 Maelou Drive Operating Co., LLC, 1818 Como Park Boulevard Operating Co., LLC, 4800 Bear Road Operating Co., LLC, 37 North Chemung Street Operating Co., LLC, 2600 Niagara Falls Boulevard Operating Co., LLC, and 200 Bassett Road Operating Co., LLC, and Elderwood Administrative Services, LLC (collectively the "Elderwood Entities") have reached a Settlement Agreement to resolve this action (*See* **Attachment 1**). In light of this agreement, and for the purpose of effectuating and formalizing that resolution, pursuant to the False Claims Act, 31 U.S.C. §§ 3730(b)(2) and (4), and New York State Finance Law § 190(2), the United States of America and the State of New York respectfully advises the Court of their decision to intervene in part and decline in part for the purposes of settlement.

Specifically, the United States of America and the State of New York intervenes in this action with respect to civil claims predicated upon the factual allegations set forth in the Settlement Agreement's "Covered Conduct." *See* Attachment 1, Paragraph D. The United States of America and the State of New York decline intervention with respect to all other claims alleged in this action.

Under the terms and conditions of the Settlement Agreement, the United States of America, the State of New York, and Relator will file a Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure following receipt from the Defendant of the payment in Paragraph 4A(i) of the Settlement Agreement. *See* Attachment 1, Paragraph 4A(i) and Paragraph 22.

In light of the Settlement Agreement reached among the parties, the United States of America and/or the State of New York do not presently intend to file a Complaint in Intervention, but reserve the right to seek leave to file such a Complaint in the event that the Defendants do not pay the full settlement amount consistent with the terms of the Settlement Agreement.

The United States of America and the State of New York understand that, upon their intervention in this action, the seal on the case will be lifted. However, the United States of America and the State of New York respectfully request that the Court order the sealing of the motions to extend time to consider intervention, along with the supporting memoranda of law. The United States of America and the State of New York request that such papers be filed under seal because they discuss the content and extent of the United States of America's and the State of New York's investigation, and were provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.

A proposed order is submitted herewith.

Respectfully submitted,

TRINI E. ROSS
United States Attorney

s/David M. Coriell
DAVID M. CORIELL
Assistant U.S. Attorney
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5731
david.coriell@usdoj.gov

DATED: July 20, 2022
        Buffalo, New York

LETITIA JAMES
Attorney General
State of New York

s/Thomas Schleif
THOMAS SCHLEIF
Special Assistant Attorney General
New York State
Office of the Attorney General
Medicaid Fraud Control Unit
Main Place Tower
350 Main Street, Suite 300 B
Buffalo, New York 14202-3750
 (716) 853-8505
thomas.schleif@ag.ny.gov

DATED: July 20, 2022
        Buffalo, New York

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Notice of Intervention in Part for Purposes of Settlement and Declination in Part (filed *in camera* and under seal) was mailed by first class mail, postage prepaid to:

**Counsel for Defendants**

Brian M. Feldman
Harter Secrest & Emery LLP
1600 Bausch & Lomb Place
Rochester, NY 14604-2711

Laura K. Schwalbe
Harter Secrest & Emery LLP
50 Fountain Plaza, Suite 1000
Buffalo, NY 14202-2293

**Counsel for Relator**

David B. Harrison
Spiro Harrison
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042

# Attachment 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services (OIG-HHS) (collectively the "United States"); the State of New York, acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU") (hereinafter "New York"); Relator Jean Nolan ("Relator"); and 4459 Bailey Avenue Operating Co., LLC, 225 Bennett Road Operating Co., LLC, 2850 Grand Island Boulevard Operating Co., LLC, 5775 Maelou Drive Operating Co., LLC, 1818 Como Park Boulevard Operating Co., LLC, 4800 Bear Road Operating Co., LLC, 37 North Chemung Street Operating Co., LLC, 2600 Niagara Falls Boulevard Operating Co., LLC, and 200 Bassett Road Operating Co., LLC, and Elderwood Administrative Services, LLC (collectively the "Elderwood Entities"). Collectively, all of the above will be referred to as "the Parties." The Parties enter into this Agreement through their authorized representatives.

## RECITALS

A.     4459 Bailey Avenue Operating Co., LLC, 225 Bennett Road Operating Co., LLC, 2850 Grand Island Boulevard Operating Co., LLC, 5775 Maelou Drive Operating Co., LLC, 1818 Como Park Boulevard Operating Co., LLC, 4800 Bear Road Operating Co., LLC, 37 North Chemung Street Operating Co., LLC, 2600 Niagara Falls Boulevard Operating Co., LLC, and 200 Bassett Road Operating Co., LLC (the "Facilities") are each privately held New York limited liability companies, which own and operate facilities in New York that provide post-acute health care services, including skilled nursing and inpatient rehabilitation.

1

B.    The Facilities do business under the Elderwood brand, as follows:

- Elderwood at Amherst: 4459 Bailey Avenue Operating Co., LLC
- Elderwood at Cheektowaga: 225 Bennett Road Operating Co., LLC
- Elderwood at Grand Island: 2850 Grand Island Boulevard Operating Co., LLC
- Elderwood at Hamburg: 5775 Maelou Drive Operating Co., LLC
- Elderwood at Lancaster: 1818 Como Park Boulevard Operating Co., LLC
- Elderwood at Liverpool: 4800 Bear Road Operating Co., LLC
- Elderwood at Waverly: 37 North Chemung Street Operating Co., LLC
- Elderwood at Wheatfield: 2600 Niagara Falls Boulevard Operating Co., LLC
- Elderwood at Williamsville: 200 Bassett Road Operating Co., LLC

C.    Elderwood Administrative Services, LLC ("EAS") provides services to each of the Facilities, including services supporting the provision and reimbursement of rehabilitation services. EAS is a wholly owned subsidiary of Post Acute Partners Management LLC.

D.    On or about February 3, 2015, Relator filed a *qui tam* action in the United States District Court for the Western District of New York captioned *United States of America and State of New York, ex rel. Jean Nolan, v. Elderwood Health Care at Linwood, Elderwood Senior Care, Inc, Post Acute Partners, and Does 1-100*, Civ. No. 15-CV-99S (hereinafter referred to as "the Civil Action"), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and the New York State False Claims Act, N.Y. State Fin. Law § 190(2). An Amended Complaint was filed on or about October 7, 2016, captioned *United States of America and State of New York ex rel. Jean Nolan, v. Post Acute Partners, Elderwood Senior Care, Inc., and Does 1-100*. On or about July 20, 2022, the United States and New York intervened, in part, in the Civil Action for purposes of settlement.

E.    The United States and New York contend that the Elderwood Entities submitted or caused to be submitted false or fraudulent claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare"), and the Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-5

("Medicaid"), by billing for skilled nursing and rehabilitation services that were not medically necessary.

F.     The United States and New York contend that they have civil claims against the Elderwood Entities for engaging in the following conduct during the period from August 1, 2013 through December 31, 2018 (hereinafter referred to as the "Covered Conduct"):

> The Elderwood Entities knowingly submitted, or caused to be submitted, false claims for payment to Medicare for physical therapy, occupational therapy and speech therapy services at the Facilities that were not medically necessary. The submission of these medically unnecessary claims resulted in artificially inflated Case Mix Indexes at the Facilities, (the metric used to calculate the cost of a skilled nursing facility's treatment of its Medicaid population), which, in turn, resulted in the Facilities' receipt of Medicaid payments to which they were not entitled.

G.     As between the Elderwood Entities and the United States, this Agreement is neither an admission of liability by the Elderwood Entities nor a concession by the United States that its claims are not well founded.

H.     Relator claims entitlement under 31 U.S.C. § 3730(d) and N.Y. State Fin. Law § 190(6) to a share of the proceeds of this Settlement Agreement and to the Relator's reasonable expenses, attorneys' fees and costs.

I.     In consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.     The Elderwood Entities shall pay to the United States the sum of Eight Hundred Thirty-Seven Thousand, Six Hundred Fifty-Seven Dollars, and Fifteen Cents ($837,657.15), an amount referred to as the "United States Settlement Amount," of which Five Hundred Fifty-Eight Thousand, Four Hundred Thirty-Eight Dollars, and Ten Cents

($558,438.10) is restitution, by electronic funds transfer pursuant to written instructions from the USAO-WDNY.

2.      The Elderwood Entities shall pay to New York the sum of One Hundred Twelve Thousand, Three Hundred Forty-Two Dollars, and Eighty-Five Cents ($112,342.85), an amount referred to as the "New York Settlement Amount," of which Seventy-Four Thousand, Eight Hundred Ninety-Five Dollars, and Twenty-Three Cents ($74,895.23) is restitution, by electronic funds transfer pursuant to written instructions from New York.

3.      The amounts to be paid to the United States and New York pursuant to Paragraphs 1-2, totaling Nine Hundred Fifty Thousand Dollars ($950,000) shall be collectively referred to as the "Settlement Amount." The Settlement Amount shall constitute a debt immediately due and owing to the United States and New York on the Effective Date of this Agreement, as defined in Paragraph 33 below.

4.  (A) <u>Payments Over Time</u>: This debt shall be discharged by payments as follows:

    1)  Within thirty (30) days of the Effective Date of this Agreement, The Elderwood Entities shall make a payment of Three Hundred Ninety Thousand Dollars ($390,000) as follows:

        a.  The Elderwood Entities shall pay the United States the sum of Three Hundred Thirty-Seven Thousand, Six Hundred Fifty-Seven Dollars and Fifteen Cents ($337,657.15); and

        b.  The Elderwood Entities shall pay New York the sum of Fifty-Two Thousand, Three Hundred Forty-Two Dollars, and Eighty-Five Cents ($52,342.85).

    2)  On December 31, 2022, the Elderwood Entities shall make the following payments:

        a.  The Elderwood Entities shall pay the United States the sum of Two Hundred and Fifty Thousand Dollars ($250,000), plus interest at 1.625% per annum; and

        b.  The Elderwood Entities shall pay New York the sum of Thirty Thousand Dollars ($30,000), plus interest at 1.625% per annum.

4

3) On December 31, 2023, the Elderwood Entities shall make the following payments:

    a. The Elderwood Entities shall pay the United States the sum of Two Hundred and Fifty Thousand Dollars ($250,000), plus interest at 1.625% per annum; and

    b. The Elderwood Entities shall pay New York the sum of Thirty Thousand Dollars ($30,000), plus interest at 1.625% per annum.

(B) The Payments Over Time shall be secured by a Confession of Judgment. The Elderwood Entities will execute an Affidavit of Confession of Judgment in the amount of Nine Hundred and Fifty Thousand Dollars ($950,000), in the form annexed as **Exhibit A**, simultaneously with the execution of this Agreement.

(C) If the Elderwood Entities or any of their affiliates are sold, merged, or transferred, or a significant portion of the assets of the Elderwood Entities or of any of their affiliates are sold, merged, or transferred into another non-affiliated entity, the Elderwood Entities shall promptly notify the United States and New York, and all remaining payments owed pursuant to the Settlement Agreement shall be accelerated and become immediately due and payable. The United States and New York shall consider any request by the Elderwood Entities that the United States and New York, in their sole discretion, waive the requirements in this paragraph upon adequate assurances of payment of any outstanding portions of the Settlement Amount.

(D) The Settlement Amount may be prepaid, in whole or in part, without penalty or premium.

5. Conditioned upon the United States and New York receiving the Settlement Amount, along with interest as provided pursuant to Paragraph 4(A)(2)-(3), the United States and New York agree that they collectively shall pay to Relator, pursuant to 31 U.S.C. § 3730(d) and N.Y. State Fin. Law § 190(6), 19% of each such payment received under the Settlement Agreement (the "Relator's Share"). The Relator's Share payments shall be made pursuant to electronic funds transfer and/or check as soon as feasible after the United States' and New York's receipt of each payment from the Elderwood Entities. Relator expressly understands and agrees that the United States and New York are only liable to the Relator for a share of funds actually received or collected by the United States or New York that are being used to satisfy the Elderwood Entities' obligations under this Agreement.

6. Subject to the exceptions in Paragraphs 7 and 19 below (concerning reserved claims and bankruptcy proceedings, respectively), and conditioned upon the United States' receipt of the United States Settlement Amount plus interest due under Paragraph 4, the United States releases the Elderwood Entities together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, or the common law theories of payment by mistake, unjust enrichment, and fraud.

7. Notwithstanding the releases given in Paragraph 6 above, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

   a.  Any liability arising under Title 26, United States Code (Internal Revenue Code);

   b.  Any criminal liability;

   c.  Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from federal health care programs;

   d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

   e.  Any liability based upon obligations created by this Agreement;

   f.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

   g.  Any liability of individuals.

8.   Subject to the exceptions in Paragraphs 9 and 19 below (concerning reserved claims and bankruptcy proceedings, respectively), and upon New York's receipt of the New York Settlement Amount plus interest due under Paragraph 4, New York agrees to release the Elderwood Entities together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; and the corporate successors and assigns of any of them, from any civil monetary claims for the Covered Conduct that New York has or may have against the Elderwood Entities under the New York False Claims Act, N.Y. State Fin. Law §§ 187 *et seq.*; N.Y. Exec. Law § 63(12); N.Y. Soc. Serv. Law § 145-b; or the common law or equitable theories of payment by mistake, unjust enrichment, and fraud.

9.   Notwithstanding the releases agreed to by New York in Paragraph 8 above, the following claims of New York are specifically reserved and excluded from the scope and terms of this Agreement:

   a.  Any civil, criminal or administrative liability arising under New York tax law;

   b.  Any civil liability that the Elderwood Entities have or may have under any state statute, regulation, or rule not covered by this Agreement;

   c.  Any criminal liability;

   d.  Any administrative liability, including mandatory or permissive exclusion from Medicaid;

e.  Any liability to New York (or its agencies) for any conduct other than the Covered Conduct;
f.  Any liability for personal or property damage or for other consequential damage arising from the Covered Conduct;
g.  Any liability based upon obligations created by this Agreement; and
h.  Any liability of individuals.

10.  Subject to the exceptions in Paragraphs 7 and 9 above, and Paragraph 19 below, (concerning reserved claims and bankruptcy proceedings, respectively), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases the Elderwood Entities together with their current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them, and its and their current and former owners, officers, directors, members, employees, physicians, and agents, individually or collectively, from any claim or cause of action the Relator has asserted or could assert on behalf of the United States or New York for the Covered Conduct under the False Claims Act, 31 U.S.C §§ 3729-3733, or the New York False Claims Act, N.Y. State Fin. Law §§ 187 *et seq.*, as well as any claims Relator has asserted, could have asserted, or may assert in the future, related to the Covered Conduct or related to the allegations in the Civil Action, except for the following claims:

a.  Any retaliation claim under 31 U.S.C. § 3730(h) and N.Y. State Fin. Law § 191; and
b.  Any claim for fees, expenses, or costs pursuant to 31 U.S.C. § 3730(d)(1) and N.Y. State Fin. Law § 190(6).

11.  Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator's receipt of the Relator's Share set forth in Paragraph 5 above, Relator and her heirs,

successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

12.     Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to the New York False Claims Act, N.Y. State Fin. Law § 190(5)(b)(ii).  Conditioned upon Relator's receipt of the Relator's Share set forth in Paragraph 5 above, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge New York, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under the New York False Claims Act, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

13.     The Elderwood Entities waive and shall not assert any defenses the Elderwood Entities may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

14.     The Elderwood Entities fully and finally release the United States and New York, and their respective agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the Elderwood Entities have asserted, could have asserted, or may assert in the future against

9

the United States or New York, and their respective agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' or New York's investigation or prosecution thereof.

15.     The Elderwood Entities fully and finally release the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the Elderwood Entities have asserted, could have asserted, or may assert in the future against the Relator, related to Relator's investigation and prosecution of the Covered Conduct.

16.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare or Medicaid contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer), related to the Covered Conduct; and the Elderwood Entities agree not to resubmit to any Medicare or Medicaid contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

17.     a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the Elderwood Entities, their present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;
(2)     the United States, or New York audit(s) and civil investigation(s) of matters covered by this Agreement;
(3)     The Elderwood Entities' investigation, defense, and corrective actions undertaken in response to the United States or New York audit(s) and civil investigation(s) in connection with matters covered by this Agreement (including attorneys' fees);
(4)     the negotiation and performance of this Agreement; and

(5)     the payments the Elderwood Entities make to the United States and New York pursuant to this Agreement and any payments that the Elderwood Entities may make to Relator, including costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicare and Medicaid Programs (hereinafter referred to as "Unallowable Costs").

b.   Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for by the Elderwood Entities, and the Elderwood Entities shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by the Elderwood Entities or any of their subsidiaries or affiliates to the Medicare or Medicaid Programs.

c.   Treatment of Unallowable Costs Previously Submitted for Payment:   The Elderwood Entities further agree that within ninety (90) days of the Effective Date of this Agreement they shall identify to applicable Medicare and Medicaid fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by the Elderwood Entities or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  The Elderwood Entities agree that the United States and New York, at a minimum, shall be entitled to recoup from the Elderwood Entities any overpayment plus applicable interest and penalties as a result of the inclusion of such

11

Unallowable Costs on previously submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States or New York pursuant to the direction of the Department of Justice and/or the affected agencies. The United States and New York reserve their rights to disagree with any calculations submitted by the Elderwood Entities or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on the Elderwood Entities or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States or New York to audit, examine, or re-examine the Elderwood Entities' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

18. a. In the event that the Elderwood Entities fail to pay the United States Settlement Amount as provided in the payment schedule set forth in Paragraph 4 above, the Elderwood Entities shall be in default of the Elderwood Entities' payment obligations ("Default") to the United States; and in the event that the Elderwood Entities fail to pay the New York Settlement Amount as provided in the payment schedule set forth in Paragraph 4 above, the Elderwood Entities shall be in Default to New York. The United States and/or New York will provide a written Notice of Default, and the Elderwood Entities shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payments due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment.

Notice of Default will be delivered to the Elderwood Entities or to such other representative as the Elderwood Entities shall designate in advance in writing. If the Elderwood Entities fail to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States or New York to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.     In the event of Uncured Default to the United States, the Elderwood Entities agree that the United States may also, at its sole discretion, (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against the Elderwood Entities for the claims that would otherwise be covered by the releases provided in Paragraph 6 above, with any recovery reduced by the amount of any payments previously made by the Elderwood Entities to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to the Elderwood Entities and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, the Elderwood Entities agree immediately to pay the United States the greater of (i) a ten percent (10%)

surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action.  In the event that the United States opts to rescind this Agreement pursuant to this paragraph, the Elderwood Entities waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against the Elderwood Entities within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of the Agreement. The Elderwood Entities agree not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any federal or state court, except on the ground of actual payment to the United States.

   c.  In the event of Uncured Default to New York, the Elderwood Entities agree that New York may also, at its sole discretion, (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against the Elderwood Entities for the claims that would otherwise be covered by the releases provided in Paragraph 8 above, with any recovery reduced by the amount of any payments previously made by the Elderwood Entities to New York under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to the Elderwood Entities and/or affiliated companies by any department, agency, or agent of New York at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement or recognizable at common law or in equity.  New York shall be entitled to any other rights granted by law or in equity

by reason of Default, including referral of this matter for private collection. In the event New York pursues a collection action, the Elderwood Entities agree immediately to pay New York the greater of (i) a ten percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) New York's reasonable attorneys' fees and expenses incurred in such an action. In the event that New York opts to rescind this Agreement pursuant to this paragraph, the Elderwood Entities waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by New York against the Elderwood Entities within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of the Agreement. The Elderwood Entities agree not to contest any offset, recoupment, and/or collection action undertaken by New York pursuant to this paragraph, either administratively or in any federal or state court, except on the ground of actual payment to New York.

       d.     In the event of Uncured Default, OIG-HHS may exclude the Elderwood Entities from participating in all federal health care programs until the Elderwood Entities pay the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusion to the Elderwood Entities. The Elderwood Entities waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion, the Elderwood Entities wish to apply for reinstatement, they must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. The Elderwood Entities will not be reinstated unless and until OIG-HHS

approves such request for reinstatement.  The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

19.     In exchange for valuable consideration provided in this Agreement, the Elderwood Entities acknowledge the following:

a.      The Elderwood Entities have reviewed their financial situation and warrant that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1(B)(ii)(I), and expect to remain solvent following payment to the United States and New York of the Settlement Amount.

b.      In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to the Elderwood Entities, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.      The mutual promises, covenants, and obligations set forth herein are intended by the Parties to and do, in fact, constitute a reasonably equivalent exchange of value.

d.      The parties do not intend to hinder, delay, or defraud any entity to which the Elderwood Entities were or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.      If the Elderwood Entities' obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, the Elderwood Entities or a third party commences a case, proceeding, or other action under any

16

law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order

for relief of the Elderwood Entities' debts, or to adjudicate the Elderwood Entities as bankrupt

or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official

for the Elderwood Entities or for all or any substantial part of the Elderwood Entities' assets,

(i) the United States and New York may rescind the releases in this Agreement and bring any

civil and/or administrative claim, action, or proceeding against the Elderwood Entities for

the claims that would otherwise be covered by the releases provided in Paragraphs 6 and 8

above; (ii) the United States and New York have an undisputed, noncontingent, and

liquidated allowed claim against the Elderwood Entities in the amount of Nine Hundred Fifty

Thousand Dollars ($950,000), less any payments received pursuant to this Agreement,

provided, however, that such payments are not otherwise avoided and recovered from the

United States or New York by the Elderwood Entities, a receiver, trustee, custodian, or other

similar official for the Elderwood Entities; and (iii) if any payments are avoided and recovered

by the Elderwood Entities, a receiver, trustee, custodian, or similar official for the Elderwood

Entities, Relator shall, within thirty days of written notice from the United States or New

York to the undersigned Relator's counsel, return any portions of such payments already paid

by the United States or New York to Relator pursuant to Paragraph 5.

        f.    The Elderwood Entities agree that any civil and/or administrative claim,

action or proceeding brought by the United States or New York under Paragraph 19(e) is not

subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise

of the United States' and New York's police and regulatory powers. The Elderwood Entities

shall not argue or otherwise contend that the United States' or New York's claims, actions, or

proceedings are subject to an automatic stay and, to the extent necessary, consent to relief from

the automatic stay for cause under 11 U.S.C. § 362(d)(1). The Elderwood Entities waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings brought by the United States or New York within 120 days of written notification to the Elderwood Entities that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on the Effective Date of the Agreement.

20.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 6, 8, 10, 11, 12 , 14, 15, and 21 (waiver for beneficiaries' paragraph), below.

21.    The Elderwood Entities agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payers based upon the claims defined as Covered Conduct.

22.    Upon receipt of the payment in Paragraph 4(A)(1), above, and subject to the terms of the Agreement, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

23.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as provided in 31 U.S.C. § 3730(d) and N.Y. Fin. Law § 190(6).

24.    Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

25.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of New York.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

26.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.  Forbearance by the United States or New York from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

27.     All non-electronic payments to New York shall be delivered to the Medicaid Fraud Control Unit, Finance Department, 13th Floor, 28 Liberty Street, New York, New York 10005. Any other notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier and/or email followed by postage prepaid first-class mail, and addressed as follows:

TO THE UNITED STATES:

Office of the United States Attorney
Affirmative Civil Enforcement Unit
138 Delaware Avenue
Buffalo, NY 14202

TO NEW YORK STATE:

Chief, Civil Enforcement Division
Medicaid Fraud Control Unit
New York State Office of the Attorney General
28 Liberty Street, 13th Floor
New York, NY 10005
MFCUNotices@ag.ny.gov

TO THE ELDERWOOD ENTITIES:

Brian M. Feldman
Harter Secrest & Emery LLP
1600 Bausch & Lomb Place
Rochester, New York 14604
bfeldman@hselaw.com

- and -

Attention: Controller
Elderwood Administrative Services
500 Seneca Street, Suite 100
Buffalo, New York 14204

TO RELATOR:

David B. Harrison
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078

28.     The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

29.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

30.     This Agreement is binding on the Elderwood Entities' successors, transferees, heirs, and assigns.

31.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

32.     All Parties consent to the United States' and New York's disclosure of this Agreement and information about this Agreement to the public.

33.     The Elderwood Entities agree with New York that the Elderwood Entities shall not take any action or make or permit to be made any statement denying, directly or indirectly, any contentions and provisions in this Agreement with New York or creating the impression that their Agreement with New York is without factual basis.  Nothing in this paragraph affects any Elderwood Entity's testimonial obligations or its right to take legal or factual positions in any litigation or other legal proceedings to which the Attorney General is not a party.

34.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement").  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

*[signatures to follow]*

## THE UNITED STATES OF AMERICA

TRINI E. ROSS
United States Attorney
Western District of New York

DATED: 7/19/2022          BY: _____
                               DAVID M. CORIELL
                               Assistant United States Attorney
                               Western District of New York


DATED: 7/6/2022           BY: _____
                               LISA M. RE
                               Assistant Inspector General for Legal Affairs
                               Office of Counsel to the Inspector General
                               Office of Inspector General
                               U.S. Department of Health and Human Services


## NEW YORK STATE

LETITIA JAMES
Attorney General
State of New York

DATED: _____    BY: _____
                               THOMAS SCHLEIF
                               Special Assistant Attorney General
                               New York State
                               Office of the Attorney General

22

## THE UNITED STATES OF AMERICA

TRINI E. ROSS
United States Attorney
Western District of New York

DATED: _____      BY:   _____
                                   DAVID M. CORIELL
                                   Assistant United States Attorney
                                   Western District of New York

DATED: _____      BY:   _____
                                   LISA M. RE
                                   Assistant Inspector General for Legal Affairs
                                   Office of Counsel to the Inspector General
                                   Office of Inspector General
                                   U.S. Department of Health and Human Services

## NEW YORK STATE

LETITIA JAMES
Attorney General
State of New York

DATED: _6/24/2022_____      BY:   _____
                                   THOMAS SCHLEIF
                                   Special Assistant Attorney General
                                   New York State
                                   Office of the Attorney General

22

**THE ELDERWOOD ENTITIES – DEFENDANT**

DATED: July 19, 2022                BY: _____

PHIL QUILLARD
Authorized Representative
Elderwood Entities


DATED: July 19, 2022                BY: _____

BRIAN M. FELDMAN
Harter Secrest & Emery LLP
Counsel for the Elderwood Entities


**JEAN NOLAN – RELATOR**


DATED: _____        BY: _____

JEAN NOLAN
Relator


DATED: _____        BY: _____

DAVID HARRISON, ESQ.
Counsel for Relator

23

## THE ELDERWOOD ENTITIES – DEFENDANT

DATED: _____          BY: _____
                                     PHIL QUILLARD
                                     Authorized Representative
                                     Elderwood Entities


DATED: _____          BY: _____
                                     BRIAN M. FELDMAN
                                     Harter Secrest & Emery LLP
                                     Counsel for the Elderwood Entities


## JEAN NOLAN – RELATOR

DATED: 4|25|2022                BY: _____
                                     JEAN NOLAN
                                     Relator

DATED: ___7/5/22___             BY: *David Harrison*_____
                                     DAVID HARRISON, ESQ.
                                     Counsel for Relator

# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA and THE STATE OF
NEW YORK, ex rel., JEAN NOLAN

                         Plaintiff,                                    15-CV-0099(S)

      v.

ELDERWOOD HEALTH CARE AT LINWOOD,
ELDERWOOD SENIOR CARE, INC., POST ACUTE
PARTNERS, AND DOES 1-100,

                         Defendants.

_____

## ORDER

       Upon consideration of the United States' Notice of Intervention in Part for Purposes

of Settlement and Declination in Part, it is hereby

       **ORDERED** that the seal on the above-captioned case be lifted except as to the

United States' motions to extend time to consider intervention, along with supporting

memoranda of law, which documents shall be sealed and/or remain sealed.

       **SO ORDERED.**

This_____ day of _____, 2022

                                              _____

                                              Hon. William M. Skretny
                                              United States District Judge