UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEAN NOLAN,

                    Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                           15-CV-99S

POST ACUTE PARTNERS MANAGEMENT, LLC,
1818 COMO PARK BOULEVARD OPERATING CO., LLC,
and ELDERWOOD ADMINISTRATIVE SERVICES, LLC,

                    Defendants.

## I.    INTRODUCTION

In this action, Plaintiff Jean Nolan alleges that Defendants illegally retaliated against her for reporting fraudulent health insurance-related practices that subsequently gave rise to claims under the federal False Claims Act, 31 U.S.C. §§ 3729 et seq., as amended ("the FCA"), and the New York False Claims Act, N.Y. Fin. L. §§ 187-194 ("the NY FCA").  Nolan asserts retaliation claims under 31 U.S.C. § 3730 (h) and N.Y. Fin. L. § 191 in a second amended complaint.  (Docket No. 66.)

Pending before this Court is Defendants' motion to dismiss the second amended complaint.[1]  (Docket No. 86.)  For the reasons set forth below, the motion is granted in part and denied in part.

---

[1] In support of their motion, Defendants filed a notice of motion, a declaration with exhibit, and a memorandum of law.  (Docket No. 86 and subparts.)  Nolan filed a memorandum of law in opposition, a declaration with exhibits, and a second declaration.  (Docket No. 93 and subparts.)  In reply, Defendants filed a memorandum of law and two declarations, each with exhibits.  (Docket No. 94 and subparts)  This Court took the motion under advisement without oral argument.

## II.    BACKGROUND

This Court assumes the truth of the factual allegations contained in the second amended complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Defendant Post Acute Partners Management, LLC ("PAPM"), is a privately held company that owns and operates facilities in several states that provide post-acute healthcare services, including skilled nursing and inpatient rehabilitation.  See Second Amended Complaint ("SAC"), Docket No. 66, ¶ 12.

Defendant Elderwood Administrative Services, LLC ("EAS"), is a health care management firm that has provided skilled nursing in New York since 1978.  Id. ¶ 13.  It owns and operates 17 rehabilitation, skilled nursing, assisted living, and independent living communities in Western New York, including a facility located at 1818 Como Park Boulevard in Lancaster, N.Y.  Id.   PAPM acquired EAS in 2013.  Id. ¶ 13.

Defendant 1818 Como Park Boulevard Operating Co., LLC ("1818 Como Park"), appears to operate EAS's facility located at 1818 Como Park Boulevard in Lancaster, which this Court will refer to as Elderwood Lancaster.  Id. ¶¶ 4, 14.

Nolan is an experienced licensed practical nurse.  Id. ¶ 38.  Over the course of her long career, she worked in multiple facilities and acquired knowledge of state and federal regulations that govern the skilled-nursing and long-term-care industries.  Id.

In April 2013, Nolan began working the night shift at Elderwood Lancaster on a per diem basis.  Id.   Two weeks later, she transitioned to working there full-time.  Id. Throughout the course of her employment, Nolan personally observed numerous unlawful

and fraudulent practices intended to maximize payments from federally and state funded health insurance programs—Medicare, Medicaid, and TRICARE. See, e.g., id. ¶¶ 4-9, 8A[2], 39. These practices are detailed in the second amended complaint, but are not at issue on this motion. Id. ¶¶ 42-61 (detailing fraudulent practices involving patient admissions in rehabilitation programs), 62-88 (detailing fraudulent practices involving manipulation of requirements to treat patients for whom services were not medically reasonable or necessary), 89-95 (detailing fraudulent billing of skilled nursing services to inflate billings). Nolan refused to engage in these practices and complained about them to her supervisors and to the corporate office, beginning in October 2013. Id. ¶¶ 9A, 10, 40, 96-116.

What followed, according to Nolan, was a course of illegal retaliation. Id. ¶¶ 10, 96-116. Nolan was first treated with hostility and threatened. Id. ¶¶ 10, 98. Then, when Nolan continued to speak out against the illegal practices, Defendants changed her position, so that she could no longer observe and report the offending conduct. Id. ¶ 10. And when Nolan reported the conduct to upper management, her supervisors created a pretext for her termination and ultimately terminated her employment at the end of April 2014.[3] Id. ¶¶ 10, 115. Nolan maintains that the retaliation and termination violate the anti-retaliation provisions in the federal and state False Claims Acts, specifically, 31 U.S.C. § 3730 (h) and N.Y. Fin. L. § 191. Id. ¶¶ 117-124. These two claims are the only ones remaining in this matter.

---

[2] Two paragraphs in the second amended complaint are misnumbered. At the top of page 5, paragraph numbers 8 and 9 are mistakenly repeated. For the sake of clarity, this Court will refer to those two paragraphs as 8A and 9A.

[3] Nolan's termination date is unclear in the second amended complaint. In paragraph 10, she alleges that she was terminated on April 29, 2014. SAC, ¶ 10. In paragraph 115, she alleges that she was terminated four days earlier, on April 25, 2014. Id. ¶ 115.

Defendants' motion implicates the relation-back doctrine, specifically whether Nolan's second amended complaint relates back to her original complaint, which did not name any of the present defendants.  See Fed. R. Civ. P. 15 (c).  Examination of the past named parties is therefore required.

Nolan originally commenced this action as a *qui tam* suit more than a decade ago, on behalf of herself, the United States, and the State of New York.  She filed the initial complaint on February 3, 2015, and named as defendants Elderwood Health Care at Linwood; Elderwood Senior Care, Inc.; Post Acute Partners; and Does 1-100.  (Docket No. 1.)  Nolan thereafter filed a first amended complaint on October 7, 2016, which dropped Elderwood Health Care at Linwood as a defendant, but kept in Post Acute Partners, Elderwood Senior Care, Inc., and Does 1-100.  (Docket No. 16.)

On July 29, 2022, the United States and the State of New York filed a Notice of Intervention in part and Declination in part for purposes of effectuating partial settlement. (Docket No. 59.)  But the partial settlement, and the subsequent joint stipulation of dismissal (Docket No. 62), did not involve any of the entities named in the first amendment complaint, which was the operative pleading at the time.  Instead, they named and involved entities that had not yet been sued in this action, including 1818 Como Park Boulevard Operating Co., LLC, and Elderwood Administrative Services, LLC, both of whom Nolan later named in the second amended complaint.

Following the partial settlement, on December 22, 2022, Plaintiff and Post Acute Partners stipulated to limited amendment of the first amended complaint to include only the removal of claims brought on behalf of the United States or the State of New York

4

and the addition of details concerning Nolan's retaliation allegations.  (Docket Nos. 63, 64.)

On January 18, 2023, Plaintiff filed the second amended complaint now at issue. Again, it names as defendants Post-Acute Partners Management, LLC; 1818 Como Park Boulevard Operating Co., LLC; and Elderwood Administrative Services, LLC.  It remains the operative pleading after this Court denied Post Acute Partners' motion to strike and granted leave to amend.  (Docket No. 75.)

In each of the three complaints, Nolan endeavored to name the nursing facility at which she worked (her employer), the owner-operator of that facility, and the owner of that owner-operator.  She identified the nursing facility at which she worked as Elderwood Health Care at Linwood in the initial complaint, <u>see</u> Complaint, Docket No. 1, ¶¶ 2, 11; as Elderwood at Lancaster in the first amended complaint, <u>see</u> First Amended Complaint ("FAC"), Docket No. 16, ¶ 3; and as 1818 Como Park Boulevard Operating Co., LLC, in the second amended complaint, <u>see</u> SAC, ¶¶ 4, 14.  She identified the owner-operator of the facility as Elderwood Senior Care, Inc., in the initial and first amended complaints, <u>see</u> Complaint, ¶ 12; FAC, ¶ 12; and as Elderwood Administrative Services, LLC, in the second amended complaint, <u>see</u> SAC, ¶ 13.  She identified the owner of the owner-operator as Post Acute Partners in the initial and first amended complaints, <u>see</u> Complaint, ¶ 13; FAC, ¶ 11; and as Post Acute Partners Management, LLC, in the second amended complaint, <u>see</u> SAC, ¶ 12.

### III.    DISCUSSION

Nolan maintains that Defendants retaliated against her in violation of federal and state law.  Defendants move to dismiss Nolan's claims under Rule 12 of the Federal Rules

of Civil Procedure as barred by the statute of limitations, for failure to state a claim upon which relief can be granted, and for improper service.  Nolan opposes the motion on all fronts.

## A.     Rule 12 (b)(6) Standard

Rule 12 (b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  In addition, if it appears from the face of the complaint that a cause of action has not been brought within the applicable statute of limitations period, the defense of limitations "may be raised in a pre-answer motion pursuant to Fed. R. Civ. P. 12 (b)(6)."  Santos v. Dist. Council of N.Y.C., 619 F.2d 963, 967 n.4 (2d Cir. 1980); see also Ghartley v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555).  "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" also will not do.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); id. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  Plausibility requires finding "more than a sheer possibility that a defendant has acted unlawfully," id., but it is not a probability requirement, Twombly, 550 U.S. at 570.  The well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible."  Id.

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Iqbal, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 662; id. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

A two-pronged approach is thus used to examine the sufficiency of a complaint.  This examination is context specific and requires the court to draw on its judicial experience and common sense.  See Iqbal, 556 U.S. at 679.  First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and factually unsupported legal conclusions, are identified and stripped away.  See id.

Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint."  Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)). But even where a document is "integral" to the complaint, it cannot serve as the basis for dismissal unless there is no dispute as to its authenticity, accuracy, and relevance.  See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

## B.    Defendants' Motion to Dismiss

### 1.    The second amended complaint is not subject to dismissal on statute of limitations grounds because the amendments relate back to the original complaint.

Defendants argue that Nolan's second amended complaint must be dismissed on statute of limitations grounds.  "Because statute of limitations is an affirmative defense, defendants 'moving to dismiss a cause of action as time-barred bear[ ] the initial burden

of establishing that the time to sue has expired.'" TADCO Const. Corp. v. Dormitory Auth. of State of N.Y., 700 F. Supp. 2d 253, 273 (E.D.N.Y. 2010) (quoting Town of Hempstead v. Lizza Indus., Inc., 741 N.Y.S.2d 431, 432 (N.Y. App. Div. 2002)).  Dismissal on statute of limitations grounds may be granted only when it is clear from the complaint that the claim is untimely.  See Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) ("[I]n the statute of limitations context . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time."); Omollo v. Citibank, N.A., No. 07 Civ. 9259 (SAS), 2008 WL 1966721, at *3 (S.D.N.Y. May 6, 2008) (same).

There is no dispute that Nolan filed her second amended complaint outside of the 3-year statute of limitations period.  See 31 U.S.C. § 3730 (h)(3); McKenna v. Senior Life Mgmt., 429 F. Supp. 2d 695, 700 (S.D.N.Y. 2006).  The question is whether Nolan's amendments relate back to her original complaint, such that they are deemed timely under the federal rules.

"If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint."  VKK Corp. v. NFL, 244 F.3d 114, 128 (2d Cir. 2001) (citing Fed. R. Civ. P. 15 (c)).  Rule 15 (c) of the Federal Rules of Civil Procedure governs the relation back of amendments to a pleading.  See Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). The rule provides in relevant part as follows:

> An amendment to a pleading relates back to the date of the original pleading when:
>
>  . . .
>
> (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

> (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii)  knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15 (c)(1).

"The rationale of Rule 15 (c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 159 n. 3, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984).  The relevant inquiry is thus "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006).

At issue is the portion of the rule that relates to changes in parties or party names. See Fed. R. Civ. P. 15 (c)(1)(C).  At the outset, this Court notes that the requirement that Rule 15 (c)(1)(B) be satisfied is met here: there is no dispute that the amendments at issue arise out of the conduct, transaction, and occurrence set out in the original complaint.  See Fed. R. Civ. P. 15 (c)(1)(B).  Aside from the identification of new defendants, the second amended complaint simply adds detail to the previously pleaded retaliation allegations.

What Defendants take issue with are the remaining requirements of Rule 15 (c)(1)(C) pertaining to mistake and notice.  Defendants first argue that the second amended complaint does not relate back to save Nolan's claims against 1818 Como Park because Nolan did not misname this defendant in her original complaint.  See Fed. R. Civ. P. 15 (c)(1)(C)(ii).  Rather, she purposefully elected not to name 1818 Como Park as a matter of strategy, because she was litigating an employment-discrimination action against it in another forum.  In that case, Nolan lodged a post-termination discrimination charge against "Elderwood of Lancaster"[4] with the New York State Division of Human Rights.  That filing occurred nine months before Nolan commenced the instant action, in which she identified her place of employment not as "Elderwood of Lancaster," but as "Elderwood Health Care at Linwood."  See Declaration of Michele R. Di Franco, Docket No. 86-1, Exhibit A; Complaint, ¶¶ 2, 11.  Defendants thus contend that Nolan has always known the true identity of her employer and did not misname it for purposes of the relation-back doctrine.

Nolan maintains that Defendants' complicated corporate structure caused her to initially misidentify Elderwood Health Care at Linwood as her employer, and therefore the relation-back doctrine should apply.  Nolan was hired by Elderwood Health Care at Linwood, but a subsequent acquisition by PAPM caused a name change to Elderwood at Lancaster, the entity Nolan named in her first amended complaint.  See Declaration of Jean Nolan, Docket No. 93-6, ¶¶ 2-5.  Nolan argues that she has always attempted in good faith to identify and name her employer and those entities responsible for retaliating

---

[4] Elderwood of Lancaster is the d/b/a of 1818 Como Park.  See Memorandum of Law, Docket No. 86-3, p. 11 n. 2.

against her, with the named parties consistently being either predecessors or affiliates of one another.

Having considered the parties' arguments, this Court finds an insufficient basis to conclude that Nolan intentionally omitted her employer from her original complaint. Rather, she mistakenly named the predecessor entity. Defendants' speculation that Nolan strategically omitted her proper employer is belied by the pleading record. In each iteration of the complaint, Nolan evidenced an intention to name the corporate entity whom she believed employed her at the facility located at 1818 Como Park Boulevard. Without the benefit of discovery, she named Elderwood Health Care at Linwood, then Elderwood at Lancaster, and now 1818 Como Park. Defendants do not deny that these are entities associated with past or current corporate ownership. Although Defendants rely heavily on Nolan having named "Elderwood of Lancaster" in her administrative charge to impute actual knowledge, there is no basis for such imputation. An equal inference is that Nolan believed "Elderwood of Lancaster" was mistaken when she instead named "Elderwood Health Care at Linwood" in her original complaint. In the end, this Court is satisfied that Nolan at all times endeavored to sue her employers for retaliating against her, and did not intentionally name a wrong entity in her original complaint.[5]

Defendants next argue that none of them had timely notice or any indication that Nolan would bring retaliation claims against them. See Fed. R. Civ. P. 15 (c)(1)(C)(ii). But it is undisputed that Defendants and the past corporate defendants are related entities that all share the same counsel. And it must have been known to them through Nolan's

---

[5] This conclusion also explains Nolan's stipulation to filing a second amended complaint against Post Acute Partners, LLC, an entity she believed was responsible for retaliation under 31 U.S.C. § 3730 (h). See Docket No. 63.

past pleading that she consistently endeavored to bring retaliation claims against the facility at which she worked (her employer), the owner-operator of that facility, and the owner of that owner-operator.   That much was plain and consistent from the original complaint and first amended complaint.   While Nolan misidentified and misnamed the various corporate entities, the real parties in interest were known or should have been known to counsel and the relevant corporate structure, including during the 90-day service period from July 29 to October 27, 2022 (90 days after unsealing of the *qui tam* action).   See Fed. R. Civ. P. 15 (c)(1)(C)(ii); Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 548, 130 S. Ct. 2485, 2493 (2010) (noting that the rule "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint") (emphasis in original).   Defendants' lack-of-notice arguments are thus unpersuasive.

"The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."   Slayton, 460 F.3d at 228; see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997) (noting that the principle purpose of the relation-back doctrine is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense").   The amendments here arise out of the conduct, transaction, and occurrence set out in the original complaint. Moreover, Defendants had fair notice of the action and of Nolan misnaming the proper parties, and they have identified no unfair prejudice in permitting the amendment.   The relation-back doctrine therefore applies, and Defendants' motion to dismiss on statute of limitations grounds must be denied.   See Fed. R. Civ. P. 15 (c)(1).

**2. Nolan sufficiently states claim against EAS, but not PAPM.**

Defendants alternatively argue that the second amended complaint must be dismissed as against EAS and PAPM because Nolan fails to state claims against them. In particular, they argue that the federal and New York False Claims Acts permit claims against only employing entities, and, in any event, Nolan fails to plausibly state her claims. Nolan maintains that EAS and PAPM may be subject to liability and that her claims are properly pleaded.

The federal False Claims Act provides as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730 (h)(1).  The New York False Claims Act provides similarly.  See N.Y. Fin. L. § 191.

To state a retaliation claim, a relator must allege that "(1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." United States ex rel. Chorches v. Am. Med. Response, Inc., 865 F.3d 71, 95 (2d Cir. 2017).  Liability lies against employers, but not against individuals in either a personal or official capacity.  See United States ex rel. Rubar v. Hayner Hoyt Corp., 306 F. Supp. 3d 478, 484 (N.D.N.Y. 2018).

14

Liability may also lie against parent corporations or other corporate relations, if there exists a high level of control and commonality of ownership. Id. at 484-85. That is, an "employer-type" relationship must exist. United States ex rel. Bias v. Tangipahoa Parish Sch. Bd., 816 F.3d 315, 324 (5th Cir. 2016) (observing that "requiring some employment relationship acts as a continuing limiting principle" on who can be sued). In Shi v. Moog, for example, the plaintiff was an employee of Moog Shanghai but also alleged that he was employed by Moog, a related entity, and he reported to Moog headquarters. See Shi v. Moog Inc., 19-CV-339V, 2019 WL 4543129, at *6 (W.D.N.Y. Sept. 19, 2019), report and recommendation adopted, No. 19-CV-339V, 2020 WL 5668979 (W.D.N.Y. Sept. 24, 2020). The court permitted the claim against Moog to stand on the basis that "Moog Shanghai is a subsidiary of Moog, and discovery plausibly could confirm a day-to-day working relationship with Moog that would suffice to make plaintiff an employee or agent of Moog for purposes of Section 3730 (h)(1)." Id.

Here, Nolan seeks to avoid dismissal of PAPM and EAS on the theory that they are corporate affiliates of 1818 Como Park and participated in the alleged retaliation. Nolan alleges that she reported the unlawful practices she observed "to her immediate supervisor at Lancaster and to Elderwood's corporate office." SAC, ¶ 97. She further alleges other contact with the "corporate office" and "corporate representatives," separate from 1818 Como Park. SAC, ¶¶ 106, 107, 111, 113, 114. And she alleges that she reported the retaliation she suffered to the corporate office, which did not intervene.[6] SAC, ¶¶ 106, 107, 111, 113, 114, 118-120, 123, 124.

---

[6] Although Nolan does not specifically allege that corporate representatives failed to intervene, such a conclusion is a reasonable inference from the stated allegations.

Given the allegation that EAS owns and operates 1818 Como Park and Elderwood Lancaster, <u>see</u> SAC, ¶ 13, it is a reasonable inference that EAS is the "corporate office" alleged in the complaint.  The allegations are thus sufficient to allow Nolan's claims to proceed against EAS, and discovery will determine whether Nolan can ultimately demonstrate a sufficient day-to-day working relationship between EAS and 1818 Como Park, such that EAS could be considered Nolan's employer.  The allegations in the second amended complaint are also sufficient to state retaliation claims against EAS for purposes of Rule 12 (b)(6).  <u>See</u> <u>Chorches</u> 865 F.3d at 95.

But Nolan's allegations are insufficient as to PAPM, which is alleged to be one-step removed from 1818 Como Park, as simply the owner of EAS, without any plausible employer-related connection to Nolan or day-to-day working relationship with 1818 Como Park.  <u>See</u> SAC, ¶ 12.  The claims against PAPM must therefore be dismissed.

Consequently, Defendants' motion to dismiss Nolan's claims will be granted as to PAPM, but denied as to EAS.

### 3. Dismissal of the second amended complaint on service grounds is not warranted.

Defendants next argue that the second amended complaint should be dismissed because Nolan failed to effectuate timely service.  Under Rule 4 (m) of the Federal Rules of Civil Procedure, a plaintiff has 90 days from filing to serve a defendant with a summons and complaint.  <u>See</u> Fed. R. Civ. P. 4 (m).  The 90-day rule also applies to service of an amended complaint on a new party.  <u>See</u> <u>Albany Patroons, Inc. v. Demperio Sports & Ent., LLC</u>, 1:21-CV-0286 (GTS/DJS), 2022 WL 4235433, at *1 n. 1 (N.D.N.Y. Sept. 14, 2022); 4B Wright & Miller, <u>Fed. Pract. & Proc. (Civil)</u> § 1137 (4th ed. 2019) ("[A]dding a

new party through an amended complaint initiates a new timetable for service upon the added defendant.").

Nolan filed the second amended complaint on January 18, 2023, which Post Acute Partners moved to strike on February 17, 2023.  (Docket Nos. 66, 67.)  Nolan then cross-moved to amend on March 10, 2023.  (Docket No. 68.)  On May 23, 2023, this Court denied the motion to strike and granted the motion to amend.  (Docket No. 75.)  Nolan served each of the defendants with the second amended complaint on June 23, 2023.  (Docket Nos. 80-82.)

Defendants argue that Nolan had until April 17, 2023, to serve them, which was 90 days after she filed her complaint, thereby making service on June 23, 2023, untimely.  Nolan argues that the 90-day period for service did not begin until May 23, 2023, when this Court granted leave to amend, making service 30 days later timely.

Rule 4 (m) permits a court to extend the time for service for an appropriate period when a plaintiff shows good cause for failing to effectuate timely service.  See Fed. R. Civ. P. 4 (m); Meilleur v. Strong, 682 F.3d 56, 61 (2d Cir. 2012) (citing Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007)).  Here, even assuming that Nolan's time to serve the second amended complaint began to run upon filing (and not upon the granting of the motion to amend), this Court finds that Nolan demonstrates good cause for failing to timely effectuate service, that being the litigation over whether the second amended complaint was properly filed and acted as the operative pleading.  Defendants demonstrate no prejudice from the arguably late service, and this Court finds none.  The request to dismiss the second amended complaint on untimely service grounds will

therefore be denied.  The second amended complaint is deemed timely served under Rule 4 (m).

## IV.    CONCLUSION

For the reasons stated above, this Court finds that Defendants' motion to dismiss must be granted in part and denied in part.  Nolan's retaliation claims survive as to 1818 Como Park and EAS, but will be dismissed as to PAPM.  The remaining defendants will be directed to answer the complaint as set forth below.

## V.    ORDERS

IT HEREBY IS ORDERED, that Defendants' motion to dismiss (Docket No. 86) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that Plaintiff's claims against Defendant Post Acute Partners Management, LLC, are DISMISSED for the reasons set forth herein.

FURTHER, that the remaining defendants must answer the complaint within 14 days of the entry date of this decision.

SO ORDERED.


Dated:        July 15, 2025
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge